CuítiA, per
Colcock, J.
In reviewing this case it is not necessary to go at large into the doctrine which relates to creditors and sureties, because it is clearly and correctly stated by the Chancellor in the first part of his decree. He therein recognizes the clear distinction between positive acts which are injurious to the surety, and mere indulgences, or even negligence. The law is well establish *117 ed, that “ the surety is entitled to every remedy whjch the creditor has against a principal debtor, to enforce every security and all means of payment; to stand in the place of the creditor, not only through the medium of the contract, but even by means of securities-entered into without the knowledge of the súrety; having a right to have these securities transferred to him though there was no stipulation for it; and to avail himself of all these securities against the debtor.” 1 Madd. Ch. 234 — 5. Nor can the creditor, by positive agreement, extend the ere- .... . . ,, dit without its operating as a discharge to the surety — but mere indulgence or neglect to sue does not produce that effect. 1 Madd. Ch. 235. >, But in the concluding part of the decree, it is thought that the Chancellor has extended the doctrine beyond its prescribed limits, in saying that neglect coupled with other circumstances ...... , ,. ot omission (as he is understood J will operate as a charge of the surety ; for the doctrine he relies on case of Law v. The East India CompanyBut on an attentive examination of that case it will bé found that the creditors were not merely inactive, but that they did acts which were radically wrong, some of them arbitrary in the extreme, and all of them calculated to injure and oppress the sureties, and yet the Master of the Rolls, who made the decree, did not release the sureties. r He no decision on that point: when speaking of Mr Law his character of surety, he says, “ I give no opinion whether the sureties are discharged, as will probably be contended hereafter if the company think fit to institute any suit. Nesbit v. Smith, and Rees v. Berrington, are very strong authorities in favour of'the sureties.” He then goes on to observe — “where any act has been done by the obligee that may injure the surety, the Court is very glad to lay hold of it in favour of the surety,” and then adds — “in this case there are more reasons do so; for there is no doubt of the solvency of the prin- *118 pipa!.” In a few sentences after he again says — “I do not mean t0 determine that the sureties are'discharged.” The principal object in the decree was to place Mr Law *n situation he was in, when about to depart from India, and to rescup him from, an act of oppression exercised on him in consequence of his connection with the East India Company. Another case is also relied on, in which Chancellor Kent says, the obligee ought not to poison the mortgage, — the obligee having destroyed the mortgage by tainting it with usury, which certainly can no more be called a mere omission than the not recording of the mortgage in this case can be called an act of the defendant.’ I think the Court of Equity have gone far enough in protecting the surety from the acts of the creditors; for from his negligence the surety can protect himself: and as to the conduct of the principal it is certainly the duty of the surety to look to that. Who places confidence in the principal? Not the creditor, or he would not require security. The surety certainly reposes confidence in him when he agrees to become bound for him. The rule of Lord Habdwicke, in 3 Atk. Rep. 93, well applies here, — “that he who trusts most shall lose most.” If, however, it could be admitted that in any case mere omission or neglect should discharge a surety, certainty it ought, to be required to be shewn that such omission has operated as an injury to the surety; for that is required where the creditor acts; and in this case I think *t is clear that the injury to the surety, if any has been sustained j has resulted from the conduct of the principal, and not from the negligence of the state. It is said, if the mortgage had been recorded, Bostick could not have sold. This is mere conjecture — for we every day see men buying land under incumbrances when they know of their existence; and although recording is notice to all the world for some purposes, yet we also know that it does not in reality give notice in any one case in a *119 thousand to any other person than the officer who records the paper. This is not all. Suppose the mortgage had been recorded, still the purchasers from Bostick would' hold the land after five years’ peaceable, uninterrupted and adverse possession. But on the other hand we can affirm with certainty that if Bostick had not sold, the others could not have bought. Again it is said, that the mortgage is uncertain in its description of the land. Whose fault is that ? Who makes the. mortgage but the mortgagor1? The surety could have seen the mortgage, and if he were dissatisfied with it, he might have required the principal to be more explicit. Upon the whole the case cannot be brought within any of those acknowledged principles on which a surety is relieved in a Court of Equity. The decree of the Chancellor is reversed, and the bill dismissed with costs.
A positive agreement to the charges the surety.
Neglect cou-¡¡¡¿'ekenm-stances of omission will discharge surety‘
If in any case Monandneg-lect could dis-surety,itmust havíopeiated as an injury to

*119
Decree reversed.